hKOSTELKA, J.
In this suit contesting the validity of a ■will, Rita Roy (“Roy”), a named legatee and friend of decedent, appeals the trial court judgment invalidating the testament. We affirm.
Facts
On November 19, 1998, James Ali Sham-sie (“Shamsie”), then dying of bone cancer, executed a will in his Shreveport, Louisiana hospital room. Shamsie had specifically requested that his attorney friend, D. Michael Hayes (“Hayes”), a resident of Natchitoches, Louisiana, come to Shreveport to assist him in preparing his last will and testament., During a marathon drafting session (approximately eight hours) overseen by Hayes, Shamsie dictated the will provisions to his long-time friend, Louis Guillotte (“Guillotte”). Guillotte hand-wrote Shamsie’s final wishes on a four-page document.
Guillotte and a hospital nurse, Diane Robbins (“Robbins”), served as witnesses to the testament. The will was read aloud to Shamsie who affixed a signature to each and every page of the document. The will bears Shamsie’s signature in five places.[1] Guillotte and Robbins also signed an attestation clause and as witnesses to the will. Hayes claims to have printed his name on the document during the execution of the will. Nevertheless, Guillotte sent the will to Hayes in Natchitoches where he later added his cursive signature to the document on the line above his printed name.
Shamsie died on December 16, 1998. In accordance with the will provisions, Guil-lotte was named succession administrator on February 3, 1999; he was allowed to withdraw by court order, however, on May 13, 1999.[2] On 1 ¡¿February 11, 1999, Sham-sie’s six children filed a petition seeking to annul the will on the grounds of Shamsie’s mental incapacity at the time of execution of the will and the failure of the document to meet statutory formalities. The petition named Guillotte and Roy as respondents to a rule to show cause why the will should not have been declared null.[3] A hearing on the rule occurred on July 1, 1999. Based upon Hayes’ admission that he placed his cursive signature onto the will after the execution of the document, and the fact that Guillotte did not witness Hayes print his signature at the execution of the will, the trial court declared the will invalid as to form and nullified the document on July 15, 1999. This appeal ensued.
Discussion
At the time of the execution of Shamsie’s will, La. R.S. 9:2442[4] provided the formalities necessary for valid statutory wills. Section B of those provisions read as follows:
B. The statutory will shall be prepared in writing and shall be dated and executed in the following manner:
*332 (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his last will and shall sign his name at the end of the will and on each other separate page of the instrument.
(2) In the presence of the testator and each other, the notary and the witnesses shall then sign the following declaration, or one substantially similar....
In accordance with the legislative intent, courts liberally construe and apply the statute, maintaining the validity of a will, if at all possible, as long as it is in substantial compliance with the statute. In deciding what constitutes substantial | ^compliance, the courts look to the purpose of the formal requirements-to guard against fraud. Succession of Guezuraga, 512 So.2d 866 (La.1987).
In this case, two copies of the will were introduced into evidence as P-1 and P-2. P-1 is a copy of the original will. This document contains Hayes’ printed name (D. Michael Hayes) with a line above it on which Hayes later placed his cursive signature. P-2 appears to be a conformed copy of the original document which also displays Hayes’ printed name and the line above it. However, an s/_[5] appears on that line instead of Hayes’ cursive signature. No party could explain who made or how this marking got on P-2.
Hayes identified both documents and explained that during the execution of the will, he printed his name on the original testament. He left the hospital without a copy of the will. Thereafter, however, he recalled that he spoke with Guillotte who asked him if he would “sign” the will. After Guillotte sent the document to him in Natchitoches, Hayes filled in the blank above his printed name with his cursive signature. Hayes explained that he eom-plied with Guillotte’s request because he “[D]idn’t see anything wrong with it.... I mean ... you can sign it anytime. It doesn’t have to be in the presence.... ” Hayes later clarified these statements to the court as meaning that as long as he was there to witness the other signatures, he believed that he “[Cjould sign it [the will] at any time,” and that he didn’t “have to sign it at the current — with the ... signing — all of it at one time.” Hayes testified that he usually signed his name in cursive.
Guillotte testified that although he saw Robbins sign the will, he did not see Hayes sign it during the document’s execution. In fact, he felt that Hayes signed the will in Natchitoches rather than at the hospital. Guillotte did not know who made the mark on P-2. Hayes’ printed name was not in Guillotte’s handwriting. |4He did not know who printed Hayes’ name on the document, although he would not disagree if Hayes stated that he did so.
Robbins testified that she believed she saw Guillotte and Hayes sign the document.
Based upon this evidence, the trial court invalidated the will for noncompliance with the statutory formalities of La. R.S. 9:2442. Specifically, the trial court orally concluded,
“[S]o having Mr. Hay[e]s’ admission that he didn’t sign it until he got to Natchi-toches and Mr. Guillotte’s testimony that he never saw Mr. Hay[e]s affix any portion of his name to the document, I believe that the document fails to meet the statutory requirements as provided by the Code. And for that reason, the document is invalid.”[6] [Emphasis ours.]
These statements clearly exhibit credibility determinations. The trial court was obviously impressed with Guillotte’s testi *333 mony and relied heavily on the witness’s conclusion that Hayes did not sign the document in the presence of the testator and witnesses. It is also evident that the court rejected both Hayes’ claim that he signed the will during its execution and Robbins’ statement regarding her “belief’ that she saw both Hayes and Guillotte sign the will in the hospital room. Ultimately, the court made the factual determination that Roy failed to prove Hayes signed the will in the presence of the witnesses and testator.[7]
Of course, it is well settled that a court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review even though the | .^appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there are two views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
When findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact’s findings, for only the fact-finder can be aware of the varieties in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Id. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit the witness’s story, the court of appeal may well find manifest error even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact-finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous. Id. Summarized, the task of the reviewing court is not to assess whether the district court’s factual findings are right or wrong in an absolute sense, but to ask whether the fact-finder’s resolution of conflicting evidence was reasonable, in light of the record as a whole. Mistich v. Volkswagen of Germany Inc., 95-0939 (La.1996), 666 So.2d 1073.
From our review of the record, we find no reason why the trial court could not reasonably credit Guillotte’s testimony and reject both Hayes’ and Robbins’ statements regarding the question of whether Hayes signed the document in the presence of the witnesses and testator.
Certainly, Guillotte’s testimony that Hayes did not sign the will during the execution of the document was corroborated by his subsequent concerns regarding the lack of a signature on the document and actions in sending the document to Hayes for a later signature.
| ^Obviously, Robbins’ mere “belief’ that she saw both Hayes and Guillotte sign the will failed to impress the trial court. We find such broad and unspecific recollection to have been reasonably rejected.
Moreover, besides Hayes testimony, the record contains no positive or independent proof regarding when the printed name was placed on the document or if Hayes penned it.[8] Indeed, Hayes’ later signing of the document, and the fact that a line is drawn above the printed name, ostensibly for a later signature, is inconsistent with his claim to have printed his name in the presence of the witnesses and testator. Moreover, considering the length of time *334 involved in the preparation of the document, it is not unreasonable to conclude that even if Hayes authored his printed name, he may have done so at some time prior to the execution of the will. This would explain Guillotte’s failure to see him affix any portion of his name to the document. This might also explain how, at some time during the several hours it took to prepare the document, copies were apparently made which did not contain the testator’s signature on each page. Clearly, the trial court, after observing Hayes’ demeanor and tone of voice, rejected his self-serving testimony. We find this conclusion to have been a reasonable one considering the above-noted reasons and Hayes’ compelling admission that he did not think he had to sign the will in the presence of the witnesses or testator.
Accordingly, after a review of the entire record before us, we perceive no manifest or clear error in the trial court’s factual findings. Moreover, we agree that Hayes’ failure to sign the testament in the presence of the testator and witnesses is fatal to the validity of Shamsie’s will under the facts of this case. Certainly, the confusion attendant to the execution of the will, Hayes signing of it at least one day after its execution, and the obvious unexplained s/_ on P-2 | vindicated an increased likelihood of fraud in this situation. Therefore, we affirm the trial court’s determination that the will fails to substantially comply with the provisions of La. R.S. 9:2442. The judgment is affirmed at Roy’s costs.
AFFIRMED.
BROWN, J., concurs with written reasons.

. One of the signatures is partly written in cursive and partly in printed letters, three are in cursive and one is completely printed with the last name misspelled.

. Afterwards, Roy sought to be appointed dative testamentary executrix on May 25, 1999. Because the will named an alternative executor, however, the trial court declined to rule on the matter pending resolution of the will dispute.

. On July 1, 1999, the date of scheduled hearing on the rule to show cause, Roy filed a peremptory exception of nonjoinder of an indispensable party because the heirs’ petition to invalidate the will did not name Roy as a party defendant. At the hearing to show cause why the will should not be invalidated, the court denied the exception finding that because Roy had been named a respondent to the rule to show cause, she had received notice of the proceedings and was therefore a party to them. Counsel for Roy also waived a motion for continuance.

.Repealed by Acts 1997, No. 1421, § 8, effective July 1, 1999.

. This notation usually denotes that the original has been signed.

. We recognize that the court assumed at one point in its reasons for judgment that Hayes printed his name. Nevertheless, we read the court's conclusion to be an ultimate rejection of Hayes' claim even regarding the printed name.

. Because we find the trial court’s ruling to be a factual one, the legal determination of whether Hayes' printed name (authored by him at the execution of the will) would have substantially complied with the provisions of La. R.S. 9:2442, is not reached.

. Indeed, even handwriting experts could have at least presented commanding proof that Hayes authored the printed name. Roy utilized no such evidence.